**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ISIS HOLLEY,                                             Case No. 1:14-cv-59

        Plaintiff,                                 Dlott, J.
                                                        Bowman, M.J.
    v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Isis Holley filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes.  As explained below, the undersigned concludes that the ALJ's finding of non-disability should be AFFIRMED, because the decision is supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

Plaintiff was born in October 1991 and was awarded child disability benefits beginning on November 1, 2003.  (Tr. 120).  After she turned 18, the Agency reevaluated Plaintiff's eligibility for benefits as an adult.  Thereafter, the Agency determined that her disability ceased on May 14, 2010.  (Tr. 123).  That determination was upheld upon reconsideration, and Plaintiff then requested a hearing *de novo* before an Administrative Law Judge ("ALJ").

1

A hearing was held on September 12, 2011, but was continued in order to allow Plaintiff additional time to obtain counsel. A second hearing, held on December 8, 2011, was also continued. A third and final hearing, at which Plaintiff was represented by counsel, was held on March 15, 2012. On August 24, 2012, in a written decision, ALJ Samuel Rodner determined that Plaintiff's disability ended on March 1, 2010, and she has not become disabled again since that date. (Tr. 20-33).

The record on which the ALJ's decision was based reflects that Plaintiff received SSI benefits as a minor pursuant to Listing 112.05(D) (mental retardation). (Tr. 138). Plaintiff attained the age of 18 on October 8, 2009 and in May 2010, Plaintiff's benefits were terminated following a disability review for eligibility for adult benefits. Plaintiff now alleges disability primarily due to a learning disability. She also suffers from anxiety and knee pain.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "left knee secondary to low grade chondromalacia, borderline intellectual functioning, and an anxiety disorder." (Tr. 22). However, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. (Tr. 25). The ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform medium work with the following limitations:

> She is limited to occasional kneeling. She must avoid concentrated exposure to pollutants such as dusts, fumes, smoke, and humidity. She can understand, remember, and carry out one to two step tasks. She can adapt to changes in the work environment that are routine and easily explainable. She needs an environment that has low time and production standards. She must avoid strict production quotas and fast-paced

2

assembly line work.  She is able to get along with others including supervisors and coworkers.

(Tr. 27).  Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the national economy, such as: warehouse worker and machine tender.  (Tr. 31-32).  Accordingly, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and is not entitled to SSI.  (Tr. 32).

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff argues that the ALJ erred by failing to find that Plaintiff's impairments met or equaled the requirements of Listing 12.05 (B) and/or 12.05(C).  Upon close analysis, the undersigned finds that Plaintiff's assertions are not well-taken.

## II. Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that

claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. However, a plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability or supplemental security benefits. *See* 20 C.F.R. § 404.1512(a).

### B. Relevant Evidence and ALJ's Decision

Plaintiff's school records indicate that an IEP was implemented early on after it was determined that Plaintiff had a cognitive disability. (Tr. 308). In 2001, Plaintiff obtained a full scale IQ of 68 on the WISC-III exam. (Tr. 382, 429-444, 308-309). On November 21, 2007, her school psychologist noted that, "[a]ccording to the DSM-IV, this student was functioning in the mild range of mental retardation. This student continued to demonstrate sub-average general intelligence." (Tr. 309).

Thereafter, on February 28, 2008, an evaluator assessed her adaptive behavior. (Tr. 311). The evaluator indicated that she was below average in the areas of fine motor skills, community living skills, receptive communication, and coping skills. (Tr. 311). Plaintiff was reassessed for Cognitive Disability eligibility determination on February 28, 2008. (Tr. 311). She attended special education classes and her report cards indicate that she earned "B"s, "C"s, "D"s, and "F"s in while in school. (Tr. 300).

Regina Murphy, Psy.D. examined Plaintiff at the request of the Social Security Administration on March 8, 2010. (Tr. 439). On the WAIS-IV, Ms. Holley obtained a full scale IQ of 57. (Tr. 442). She was diagnosed with anxiety disorder, NOS and borderline Intellectual functioning with a GAF of 60. (Tr. 443-444). Dr. Murphy found Plaintiff had

5

impaired short term memory skills, limited arithmetic reasoning abilities including using her fingers to count, limited reasoning abilities, and expected she would have difficulty managing funds.  (Tr. 439-444).  She noted that Plaintiff's "tested IQ was consistent with…her educational background and clinical presentation, but her anxiety may have interfered with her performance."  (Tr. 442). Dr. Murphy further noted that "[Plaintiff] did not appear to exaggerate or minimize her difficulties. She was adequately motivated." (Tr. 440).

On March 18, 2010, Dr. Lewin, a state agency psychological consultant, reviewed the medical record, including Dr. Murphy's psychological consultative report, and concluded that Plaintiff's mental impairments were associated with mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintain concentration, persistence or pace, and no episodes of decomposition.  (Tr. 486).

On October 23, 2010, Dr. Umana, another state agency psychologist, reviewed the medical record and also concluded that Plaintiff's mental impairments were associated with mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation.  (Tr. 522-24).

With respect to Plaintiff's physical impairments, the record indicates that Plaintiff also suffers from knee pain due to "very minimal" flattening of the medical femoral condyle along with low grade chondromalacia of the articular cartilage of the patella. (Tr. 588).

In April 2011 and May 2011 the Agency determined that Plaintiff's learning impairment did not qualify as an adult disability.  (Tr. 120, 154, 318).  Relying on the analysis provided by the Agency psychologist, the Hearing Officer found that "the claimant now has the residential functional capacity for simple, routine work tasks not involving significant interaction with others."

In light of the foregoing, at Step-2 of the sequential evaluation the ALJ determined that Plaintiff had the following severe impairments, left knee secondary to low grade chondromalacia, borderline intellectual functioning, and an anxiety disorder. (Tr. 22).

At Step 3, the ALJ determined that Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listings 12.05 and/or 12.06. (Tr. 25).  In making this finding, the ALJ considered the paragraph B criteria (paragraph D for 12.05), and determined that Plaintiff had mild limitations in activities of daily living, social functioning, moderate restriction of concentration, persistence or pace. *Id.*

With respect to Listing 12.05 (mental retardation), the ALJ noted that Dr. Murphy's evaluation report shows IQ scores falling below the 70 threshold.  However, the ALJ determined that Plaintiff's "ability to perform activities of daily living is more consistent with borderline intellectual functioning rather than mild mental retardation." (Tr. 27).  The ALJ also noted that Plaintiff's daily activities further support a diagnosis of borderline intellectual functioning noting that she performed household chores; including daily vacuuming and laundry; using public transportation, cooking, reading books and working a summer job.  (Tr. 27)

**C. The ALJ's decision is substantially supported**

Plaintiff argues primarily that the ALJ erred in finding that Plaintiff's impairments did not meet the requirements of listing 12.05 (B) and/or (C). Listing 12.05 provides in relevant part:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports an onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> (B) A valid verbal, performance, or full scale IQ of 59 or less; or
>
> (C) A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05C.

Both § 12.05(B) and (C) first require the claimant to show significantly subaverage general intellectual functioning with deficits in adaptive functioning that began before she turned 22 years. 20 C.F.R. Pt. 404 Subpt. P, App. 1, §§ 12.05, 12.00A. Under the regulations, deficits in adaptive functioning are "manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.00(C)(4); *see also West v. Comm'r Social Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007) ("Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills."). Section 12.05(b) also requires a valid verbal, performance, or full scale IQ of 59 or less. Meanwhile § 12.05(c) also requires a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or

other mental impairment imposing additional and significant work-related limitations or functions. *See West*, 240 F. App'x at 697-98 ("In essence, then, a claimant must make three showings to satisfy Listing 12.05(c) . . . .").

Prior to 2001, there was some ambiguity as to whether a claimant seeking to meet or equal Listing 12.05(C) must not only have an IQ score of 60 through 70, but also show "deficits in adaptive functioning" as suggested in the introductory paragraph 1 to Listing 12.05.  However, in *Foster v. Halter,* 279 F.3d 348 (6th Cir. 2001), the Sixth Circuit clarified that a claimant is also required to satisfy the "adaptive functioning" standard.  In *Foster*, the plaintiff had dropped out of school after the ninth grade and had two sets of qualifying IQ scores, but the appellate court affirmed the determination that she did not satisfy Listing 12.05 because there was no evidence of deficits in adaptive functioning before age 22, and because the plaintiff's prior work at a bank and a liquor store demonstrated "that she had the ability to perform relatively complicated tasks."  *Id.* at 355.  Thus, after *Foster*, for a claimant to meet Listing 12.05, he or she "must demonstrate three factors to satisfy the diagnostic description: (1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations," in addition to the criteria under A, B, C, or D of Section 12.05.  *See Hayes v. Comm'r of Soc. Sec.*, 357 Fed. Appx. 672, 675 (6th Cir.2009) (finding that the claimant's adaptive skills were not deficient because she cared for herself and her husband; cooked meals, did laundry, shopped, managed her finances; and took public transportation).

Plaintiff contends that her school records demonstrate deficits in intellectual and adaptive functioning prior to age 22. She further contends that she has a valid IQ score

between 60 and 70 and also has additional work-related limitations.  As such Plaintiff argues that the ALJ erred in failing to finding that she meets the criteria for Listing 12.05(C).  Specifically, Plaintiff argues that the ALJ erred in failing to address portions of Plaintiff's school records pertaining to adaptive functioning.  As noted above, the records contain three evaluations of Plaintiff's adaptive functioning in her school records. Such evidence, however, fails to establish that Plaintiff currently suffers from deficits in adaptive functioning.

Under the regulations, deficits in adaptive functioning are "manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.00(C)(4); *see also West v. Comm'r Social Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007) ("Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills.").  As noted by the Commissioner, Courts in this circuit have repeatedly found that a Plaintiff's ability to interact with friends, do chores, read, use public transportation, work, manage her own bank account, and graduate from high school substantially demonstrated that she did not have significant adaptive limitations. (Tr. 27). *See Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x. 672, 675 (6th Cir. 2009) (Claimant does not show deficits in adaptive functioning because she cooks, does laundry and shops, manages her finances, and takes public transportation); *West*, 240 F. App'x at 698 (claimant had no deficits in adaptive functioning because he worked, interacted with friends and family each day, cared for daily needs, paid bills, shopped for groceries, and did numerous other daily activities); *Lewis v. Colvin*, 2014 WL 2619592, at *7 (E.D. Ky. 2014) (unpublished) (Plaintiff does

10

not have deficits in adaptive functioning because she can read, write, and communicate effectively; follow instructions and answer questions; use the computer; do chores; take public transportation; care for her personal needs; interact with family and friends; and have a boyfriend).

Here, as noted by the ALJ, Plaintiff testified in March 2012 that her intellectual functioning did not hinder her abilities to play softball, manage the basketball team, do activities with 10-11 friends, or have a boyfriend. (Tr. 23, 55-56, 70, 443). Furthermore, Plaintiff also testified that she vacuumed and did dishes every day, did laundry once a week, and could cook. (Tr. 72-73, 74). She also went to the grocery store with the food stamp card, even though counting change can confuse her and she could take buses. (Tr. 73, 84-85). She was able to deposit the check from her full-time summer job into her bank account and she independently used her debit card. (Tr. 47-51, 89-90, 91-92). She graduated from high school and worked a summer job. (Tr. 28, 47). In light of the foregoing, regardless of previous evaluations, Plaintiff's most recent reports of her own activities substantially demonstrative no significant limitations in adaptive functioning.

Notably, there is no requirement that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.,* 167 Fed.Appx. 496, 508 (6th Cir.2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.,* 198 Fed.Appx. 521, 526 (6th Cir.2006). Here, the ALJ's decision notes that Plaintiff attended special education classes in school and had an IEP since third grade. (Tr. 23). The ALJ also considered Dr. Murphy's evaluation which noted that previous testing indicated that Plaintiff was

11

functioning in the extremely low range of intellectual functioning.  However, as noted above, Plaintiff's most recent reports of her own activities do not demonstrate any significant limitations in adaptive functioning.  Thus, to the extent that the ALJ did not explicitly address Plaintiff's school evaluation, such omission is at best harmless error. As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1233 (6th Cir.1993).  Such is the case here.

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

> */s Stephanie K. Bowman*
> Stephanie K. Bowman
> United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ISIS HOLLEY,                                                    Case No. 1:14-cv-59

        Plaintiff,                                       Dlott, J.
                                                               Bowman, M.J.
    v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

13